LOUISE C. H. PILCHER,. as *Administratrix* of the estate of *J. R. F. Pilcher, deceased, et al.,* v. W. H. BROWN *et al.*

ACTION *to Quiet Title — Cross-Bill — Decree for Defendants.* In an action by the plaintiffs to quiet title, where it appeared that they purchased the land of the agents of the owner on the 6th day of June, and the defendants bought the same land, and the landlord's interest in the lease, of the owner, without previous knowledge of the sale, on the 8th, taking a bond for a deed, which was properly acknowledged, and duly recorded on the 18th of the same month; and the defendants entered upon the land about the same time, with the consent of the tenant, who had a lease of the premises for one year, to dig coal; and afterward, on hearing of the sale by the agents, the owner made

a deed for the same land to the plaintiffs, which recited the fact that it was given subject to a certain mortgage and the bond for a deed given to the defendants; and the plaintiffs purchased the interest of the tenant in the premises, but permitted him to remain in possession, and there is no other evidence of possession upon the part of plaintiffs, *held*, that as against the plaintiffs, the defendants were entitled to a decree quieting the title to the land.

*Error from Lyon District Court.*

THE opinion contains a sufficient statement of the case.

*I. O. Pickering*, for plaintiffs in error.

*J. Jay Buck*, for defendants in error.

Opinion by GREEN, C.: On the 1st day of August, 1887, the plaintiffs in error commenced this action in the district court of Lyon county, to quiet the title to the southwest quarter of the southeast quarter and the east half of the southwest quarter of section 23; also two and seventy-four one-hundredths acres in the northeast quarter of section 27, all in township 16, of range 12, alleging in general terms that they were in possession, and that the defendants set up and claimed an estate and interest adverse to plaintiffs' title. The defendants answered by denying generally the petition, and claimed that they were the equitable owners of the land, and by way of a cross-bill alleged possession of the premises, claimed adverse to the plaintiffs, and asked for affirmative relief by way of annulment of plaintiffs' title, and that their title be quieted. At the February term, 1888, the case was tried by the court and the following conclusions of fact made:

"1. On and before May 27th, William Lewis owned the land in controversy.

"2. Glendenning & Sawyer were real-estate agents at Admire, Kansas, and were, by the said Lewis, duly authorized to sell said land.

"3. On June 6, 1887, said agents sold said land to the plaintiffs, by contract in writing; said writing consisted of the letters and telegrams in evidence, which were written and signed by the said plaintiffs and by said agents of the said

13 — 45 KAS.

Lewis, Glendenning & Sawyer; the said plaintiffs paid on said contract the sum of $100 at the time it was made, and were able, ready and willing to pay the remainder of the purchase-price upon the receipt of the deed from said Lewis for said land.

"4. Immediately after closing said sale, and on June 6, 1887, said agents informed said Lewis of said sale by mail; Lewis resided at Lerado, Reno county, Kansas.

"5. The land in controversy is located within one and one-half miles of the village of Admire, in Lyon county, Kansas, and the defendants all reside in said village of Admire, near said land.

"6. On June 8, 1887, at Lerado, Kansas, said Lewis made an agreement with one T. D. Griffith, who was agent of the defendants, to sell said land to the defendants upon the terms and conditions stated in the bond for a deed, a copy of which is attached to defendants' answer in this action, and to which reference is here made; and the said T. D. Griffith, as agent for the said defendants, then paid to said Lewis the sum of $200 cash, and executed the defendants' negotiable notes for the $800 and the $1,000 mentioned in said bond.

"7. At the time of the execution and delivery of said bond for a deed, and payment of said $200 and the execution of said notes as aforesaid, neither the said defendants nor their said agent, T. D. Griffith, had any knowledge or notice whatever of the aforesaid purchase by the plaintiffs.

"8. On June 18, 1887, the defendants duly filed their said bond for deed in Lyon county, Kansas, for record, it having been duly acknowledged when executed.

"9. On June 20, 1887, Lewis having heard of the aforesaid sale to the plaintiffs, carried out the same by executing to them a general warranty deed to said land; said deed contained among other recitals the following, viz.: 'The above described land is free and clear of all incumbrances whatever, except a mortgage of $1,700 on same land, together with a bond for a deed held by Griffith and Brown on said land.' The plaintiffs, in consideration of said deed, paid Lewis the purchase-price agreed upon by them with the said Glendenning & Sawyer, on June 6, 1887, as aforesaid; said payment was made in cash, and amounted to the sum of $1,800; the plaintiffs, to procure said deed, indemnified Lewis against loss on account of the said sale to the defendants; the plaintiffs duly recorded said deed June 25, 1887.

"10. At the time of the foregoing transactions said land was in the actual possession of a tenant of Lewis, who was entitled to the possession thereof until March 1, 1888; said tenant, after June 20, 1887, sold out his right to plaintiffs, surrendered possession of said land as said plaintiffs' tenant, and was so in possession when this suit was begun.

"11. After said purchase and possession by the plaintiffs as aforesaid, the defendants, claiming said land, entered thereon and began prospecting for coal, and were so prospecting thereon when this suit was begun.

"12. Lewis, after the delivery of the deed to the plaintiffs and before this suit was brought, tendered to the defendants the cash paid and the notes given by them, which they refused to receive.

"13. After this suit was brought, the defendants tendered frill payment of the notes given to Lewis and demanded a deed, which was refused.

"14. On June 4, 1887, W. H. Brown, one of the defendants, and the aforesaid T. D. Griffith, went to the land in controversy and there inquired of the said tenant then living on said land as to the residence of Lewis, and were informed by said tenant that said Lewis resided at Lerado, Kansas; they were also informed at said time that the aforesaid Glendenning & Sawyer, real-estate agents at Admire, Kansas, were trying to get the agency for the sale of said land.

"15. On the 7th day of June, 1887, said Griffith left Admire and went to Lerado, Kansas, and there concluded the transaction mentioned in conclusion number 6 herein. Neither Griffith nor said defendants made any inquiry of said Glendenning & Sawyer concerning said land before said Griffith left as aforesaid. It is about two hundred miles from Admire to Lerado.

"16. The plaintiffs, prior to and at the time of all the foregoing transactions, were the managing officers of a coal company operating at the said village of Admire, and the aforesaid Glendenning & Sawyer were the local agents of said coal company at Admire, and superintendents of its business."

Upon the above findings, the court held as a conclusion of law, that the defendants below were entitled to the land, and rendered judgment quieting the title in defendants and for costs against the plaintiffs, who bring the case here.

The first contention is, that the defendants did not prove

that they were in possession of the land at the commencement of the action, and hence, could not have affirmative relief; that according to the findings, the plaintiffs were in possession. The situation in regard to the possession of this land was somewhat peculiar. It appears from the evidence and special findings, that William Lewis owned the land in controversy in May, 1887; on June 6th, Glendenning & Sawyer, as agents of the owner, sold the land to the plaintiffs; two days after this, Lewis gave the defendants a bond for a deed for the same land, in which it was stipulated that the defendants were to have the landlord's share of all of the growing crops and fruit from the place, except fifty dollars of the proceeds of the orchard; the farm was in the actual possession of a tenant, who was entitled to remain in possession until the 1st of March following; on the 18th of June, the defendants filed their bond for a deed in the office of the register of deeds of Lyon county, it having been properly acknowledged; about the 20th of June the defendants, with the consent of the tenant, went upon the land to prospect for coal; on June 20, Lewis made a deed to the plaintiffs, containing the recitation set out in the ninth finding; sometime after this, the tenant sold out his right to the plaintiffs, but still remained on the place, and plaintiffs in error claim that he continued to hold the actual possession of the land as their tenant.

Let us see how this could affect the rights of the defendants. This sale took place the 5th day of July; the defendants held a bond for a deed, which was of record some days before this, for the land, and the right to the landlord's share of the crop, except fifty dollars of the proceeds of the orchard. Could this sale, by the tenant of Lewis, interfere with defendants' possession, or confer any rights upon the plaintiffs, who took a deed after the recording of this bond for a deed, with an express recitation therein that the conveyance was made subject to this instrument, and to procure the same the plaintiffs were obliged to indemnify the former owner against loss, and the tenant could not, under § 11 of the landlord-and-tenant act, transfer his interest, or any part thereof, to another, with-

out the written assent of the landlord, or person holding un-
der him?   (Gen. Stat. of 1889, ¶ 3620.)

We think, under this bond for a deed, the defendants below
held the equitable title to the land and owned the landlord's
interest in the lease, and the evidence and special findings show
a sufficient possession to entitle the defendants to a decree quiet-
ing the title, as against the plaintiffs.

We see no reason for disturbing the judgment of the court
below, and recommend an affirmance thereof.

By the Court: It is so ordered.

All the Justices concurring.